## REAL ESTATE—ADVERSE POSSESSION.

3 Dec.
241

[Stark Circuit Court, February Term, 1895.]

### P., FT. W. & C. RY. CO. V. CITY OF CANTON ET AL.

RIGHT OF GRANTOR OF LAND TO ACQUIRE TITLE THERETO BY MERE CONTINUED POSSESSION

Where real estate is conveyed by deed to a grantee, but the grantor remains in continuous possession thereafter for twenty-one years, such possession is not adverse and does not vest title in the grantor as against his prior grant, unless the grantee has actual notice of the intention to so hold, or by such open and notorious acts that notice will be presumed.

JENNER, J. (orally).

The Pittsburg, Ft. Wayne & Chicago Railway Company and the Pennsylvania Company against the city of Canton et al., was an action in the court below, brought by the City of Canton and the other plaintiffs named against the two railway companies, alleging, among other things, that these plaintiffs were the owners of certain real estate described in the petition, lots, or parts of lots in the City of Canton, and the City of Canton claimed to be the owner of a certain alley, also described in the petition; and they aver that the defendants threatened and are about to remove the fences now bounding and separating the several tracts of the plaintiffs, and to remove the other improvements that may be on said strip of land claimed by the defendant, and they threaten to take possession of the real estate described, and they ask that the defendants be restrained during the pendency of this action, and on final hearing the claim of each of the defendants may be held to be null and void, and title quieted. That is substantially the claim made in this petition.

The defendants answer, and admit that they are about to enter upon and take possession of the alley and of the strip of land, and they deny the existence of any public alley as claimed in the petition. And they aver that they are entitled to the exclusive possession of the ground described in the petition. That presents the issue that was tried in the court below.

Counsel do not differ very much as to the facts of the case. The record shows that Joseph Meyer, January 1, 1851, owned all of the real estate described in the petition. It also appears in the record that on that date, by deed of general warranty he conveyed to The Ohio and Pennsylvania Railroad company, a strip of land lying on each side of its railroad fifty (50) feet from the center line of the track, and it is admitted that the land conveyed by that deed comprises the land now in dispute. So much of the deed as described the conveyance to the railroad company by Meyer reads as follows: " A strip of land one hundred (100) feet wide running eastwardly and westwardly through said quarter, being that part of said quarter appropriated and occupied by the said Ohio and Pennsylvania Railroad company for their said road as now located; the same containing and occupying fifty (50) feet on each side of the centre line of said road, and no place to exceed one hundred (100) feet in width."

The record also shows that Meyer, through his tenants, continued to farm this land so conveyed, at least up to a fence that was erected on each side of the railroad track. He continued to do this until his death, in 1869. It also is an admitted fact that twenty-four or five years before the bringing of this action the railway company constructed fences on each side of the railway track; that these fences were thirty-three (33) feet from the centre line of the railroad.

Now, it further appears that at the death of Meyer, by the provisions of his will, this real estate passed to his widow, giving to her at least a life estate, with probable remainder over to minor heirs.

It appears also that in 1887 proceedings were commenced to sell part of this real estate, the part lying on one side of the railroad track; and such proceedings were had that an order of sale was issued and the sale made. And later, another proceeding was instituted for the purpose of effecting a sale of the residue, and that was sold in 1886. One of the purchasers of a portion of the land, platted it, laid it out in lots, and sold a number of the lots.

Another question that was raised is this, as to whether or not the acts of Meyer, and of Meyer's widow, and I may say, of those claiming under them, by virtue of the proceedings that were instituted in the court and the sale thereafter, as to whether or not those were such acts as constituted adverse possession as laid down by our supreme court.

On the one side it is claimed that the grantor could not by any act of his by remaining in possession and simply using the land for farming purposes—by no length of time would he acquire title as against his deed, unless by some open and notorious act he made it known that he did claim the property as his own as against the deed, so that the grantee would understand that he was making that claim

On the other side it is maintained that all that was necessary was for him to exercise such acts of ownership as if a stranger to the deed had done the same thing it would result in twenty-one (21) years in a perfect title.

Now, I want briefly to refer to a few authorities, and very briefly. We are cited to this case in the 13th Ohio State, case of *Lane* v. *Kennedy et al.*, which announces the general doctrine, and I read from page forty-six and forty-seven. " But the mere undisturbed possession of lands for any length of time, which is all that the charge assumes, does not of itself create such bar as against a natural person. To have such effect the possession must not only have been open and notorious, but it must also have been adverse during the whole period of twenty-one years." That is the doctrine of continuous possession. "The fact of possession *per se*, is only an introductory fact to a link in the chain of title by possession, and will not simply of itself, however long continued, bar the right of entry of him who was seized, and of course, creates no positive title of any kind."

Now, the court in announcing this principle does not refer to a grantor; but it is the general doctrine as against a party not a grantor. "To make such possession adverse there must have been an intention on the part of the person in possession to claim title, so manifested by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim."

That is simply the general doctrine and the 40th Ohio State, 365, simply states also the general doctrine of adverse possession. We are cited to 1 Wendell, case of *Brown* v. *Burton*, 341, in which this principle is announced. " In ejectment where the grantor of a small lot of land remains in the possession of the premises conveyed for twenty-seven years, and no entry or act of ownership on the part of the grantee was shown, it was held that such possession was not adverse. It remained in the possession for twenty-seven years and nothing but a clear, unequivocal and notorious disclaimer of the title of the grantee could retain the possession, however long continued, adverse." And the statement here and the facts, of course, sustain the proposition announced in the syllabus.

And we are again cited to a late case reported in this 25th Atlantic Reporter, page 802, case of *Connor et al.* v. *Bell et al.*, supreme court of Pennsylvania, the opinion was announced January 3, 1893. " The mere continued possession by a vendor of a portion of the land sold is not, when unaccompanied by any further assertion of claim, adverse."

Bell was the owner of this land at one time; Bell was the grantor and he conveyed it, and the court in announcing the opinion, said this among other things: "It will thus be seen that Bell claimed the land in opposition to his own

deed, and rested his claim upon the adverse possession of a portion of lot number 591; this possession was again taken by Strip, or his successor in title. Strip purchased the lot and immediately took possession of a portion of it for the purpose of drilling an oil well thereon, and further the adverse holding was that mere continuation by the vendor of the possession he had when he sold to Strip—the mere possession by the vendor of the land is not adverse as against the vendor. We are cited to these authorities and some others.

Counsel on the other side claim the rule is, as announced in the 13th and 40th Ohio State. The reason for the rule, if we are to go back to the reason, would seem to be a very good one, as announced in this Wendell, and in this Pennsylvania state case. Can a man sell land, convey it by deed, and then, because the other party does not take possession of all of it, and that continues for twenty-one years, or longer, can he say, 'why, as against my deed, I am the owner?' Can he do that, without, after the delivery of the deed, doing some such positive act that would put the grantee upon notice? It would seem that ought to be the law as announced here. Certainly we must hold it to be so in the absence of any authority to the contrary. There is nothing in our state, that we know of, and indeed we know of nothing elsewhere, that would relieve the grantor from doing some such positive act that would at once advise the grantee that he intended as against his own deed to hold the land sold; and if he did that, and twenty-one years is allowed to elapse, then, of course, a perfect title would be acquired.

We have been referred to the case of Chapman against the railroad company, which was disposed of in this court at a former term. It is stated that the opinion in that case, the conclusion the court then came to, is contrary to this holding as I have indicated. We do not think so. In that case, in 1852 Teeters made a verbal contract with the railroad company for six acres of land; no deed was executed; it runs along for years, many years; Teeters, in the meantime, platted that same land, or part of it, in town lots, sold the lots adjacent to or abutting upon the railroad. Buildings were erected up to the line of the railroad, indicating clearly just where the line of the lots was. There happened to be one or two vacant lots it had been that had been controlled by Teeters, the city prison had been located upon it and used as a kind of dumping ground for refuse, with the permission of Teeters.

Years after, when this verbal contract seemed to have been abandoned, the suggestion was made by the officers of the company, "Teeters, will you still convey that land, or what would you insist upon?" "Well," he says, "if you pay me $785.00 an acre and all the taxes I have paid, you can have it."

They assented to that; said that is reasonable, and thereafter they send the deed to him, which he executes without very careful examination, but nevertheless it was apparent that there was a mistake. That was the principle upon which that case was disposed of, and there was no intention, and could not have been any intention to convey those buildings, or any part of them; and they indicated the line along which the railroad company intended to claim, and Teeters intended to convey.

We think the finding and judgment of the court below is erroneous in this case, and we will reverse it; and a decree may be rendered here in favor of the company.

*Messrs. Carey, Boyle & Mullins*, for Plaintiff in Error.

*P. J. Collins, City Solicitor*, for Defendant in Error.